United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA E. JAY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SERVICE EMPLOYEES INTERNATIONAL UNION - UNITED HEALTH CARE WORKERS WEST, et al., <br><br> Defendants. | Case No. 16-cv-01340-EMC <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** <br><br> Docket Nos. 9, 12 |

Plaintiffs Sheila Jay and Robin Bongon (collectively, "Plaintiffs") filed the instant action against two unions, International Union of Operating Engineers ("IUOE") and Service Employees International Union ("SEIU") (collectively, "Defendants").  Docket No. 1 ("Compl.").  Plaintiffs allege four causes of action: (1) Breach of Duty of Fair Representation (Plaintiff Jay), (2) Breach of Duty of Fair Representation (Plaintiff Bongon), (3) Breach of the Covenant of Good Faith and Fair Dealing (Both Plaintiffs), and (4) Unfair Business Practices (Both Plaintiffs).  *Id.*  On May 23, 2016, Defendants filed motions to dismiss the complaint.  Docket No. 9 ("IUOE Mot."); Docket No. 12. ("SEIU Mot.").

The Court heard argument on the motions on July 21, 2016.  Having considered the parties' briefs and the arguments presented at the hearing, the Court **GRANTS** Defendants' motions to dismiss.

## I.      BACKGROUND

A.      Plaintiff Sheila Jay

Plaintiff Jay is a former employee of Kaiser Foundation Hospitals, Inc. ("Kaiser").  Compl. at ¶ 21.  She began working at Kaiser in 1990 as a Radiological Film Processor in the Clinical

Technology Department and became a member of the SEIU under the collective bargaining agreements ("CBA-1").  *Id.* at ¶ 10.  In January 2013, Kaiser eliminated Jay's position, and IUOE became Jay's exclusive bargaining agent.  *Id.* at ¶ 14.  Under a new collective bargaining agreement ("CBA-2") between Kaiser and IUOE, Jay was given the option to transfer into a Biomedical Engineer Technician ("BET") position if she met additional educational requirements.  *Id.* at ¶ 15.  However, she did not meet her requirements within 30 months, and on October 16, 2015, Kaiser terminated her employment.  *Id.* at ¶ 21.  Jay alleges that her employment was wrongfully terminated because SEIU and IUOE conspired with Kaiser and failed to protect her rights in three different incidents.  *Id.* at ¶ 1.

First, SEIU failed to take action on her grievances in 2005 when Kaiser initiated the BET program.  *Id.* at ¶ 11.  The program required employees in the Clinical Technology Department to meet new educational and experiential requirements to maintain employment with Kaiser.  *Id.* Kaiser granted waivers for a number of Jay's co-workers who were primarily male, not African-American, and not Filipino-American.  However, Kaiser did not grant an exemption for Jay, who is an African-American female.  *Id.*  Jay lodged complaints to Kaiser and filed grievances to SEIU for a number of years but SEIU did not take any actions on her grievances.  *Id.* at ¶¶ 11, 12.

Second, SEIU failed to represent her interests in 2012 when Kaiser reorganized the Clinical Technology Department.  *Id.* at ¶¶ 13, 14.  Kaiser took steps towards transitioning to a digital imaging environment and told Jay that her position would be eliminated.  *Id.* at ¶ 13.  Jay filed another grievance with SEIU during 2012.  *Id.*

Last, SEIU and IUOE failed to represent her interests in 2013 when Jay's position was eliminated.  *Id.* at ¶¶ 15-21.  In January 2013, Kaiser and SEIU reached an agreement regarding the transition for Jay and three other employees in the Clinical Technology Department.  *Id.* at ¶ 15.  The parties formulated a Letter of Agreement ("LOA"), and the unions told Jay that she would lose her job with Kaiser unless she executed the LOA.  *Id.* at ¶¶ 14, 15.  According to the agreement, Jay and three other employees in the Clinical Technology Department were given the option to transfer to either a BET or Biomedical Assistant ("BA") position.  *Id.* at ¶ 14.  To qualify for the BET position, Jay was required to meet additional experiential and educational

requirements within 30 months.  Compl. at ¶ 15.  However, the LOA stated that the time period could be extended at Kaiser's discretion, and representatives from Kaiser and SEIU assured Jay that the time period would be extended for her if necessary.  *Id.*  Nonetheless, when Jay requested additional time in July 2015, Kaiser denied her request and IUOE made no effort to represent her in this controversy.  *Id.* at ¶¶ 18, 19.

Jay also alleges that Kaiser did not enforce the requirements in the same manner against other employees who were not female or African-American.  *Id.* at ¶ 18.  Jay disputed the manner Kaiser implemented the education requirements with Kaiser, SEIU, and IUOE, but the unions failed to enforce her rights under the CBA-1 and CBA-2.  *Id.*  Furthermore, IUOE entered into a new collective bargaining agreement with Kaiser ("CBA-3") some point after July 2015, which no longer requires employees to complete the BET program to qualify as a biomedical engineer.  *Id.* at ¶ 20.  CBA-3 became effective on September 18, 2015; Jay was terminated on October 15, 2015.  Gong Decl. Ex. C (CBA-3); Gong Decl., Ex. H (termination letter).

Finally, Jay asserts that the LOA was legally ineffective.  Compl. at ¶ 34.  She alleges that Kaiser and the unions knew "Jay was not an authorized representative of SEIU."  *Id.*  Therefore, she argues that their signatures to the LOA were legally ineffective and the LOA was void and without force and effect.  *Id.*  Nonetheless, Kaiser, SEIU, and IUOE conspired to instruct Jay and others to execute the LOA.  *Id.*

B.  **Plaintiff Robin Bongon**

Plaintiff Bongon is a current employee of Kaiser Foundation Hospitals, Inc. ("Kaiser").  Compl. at ¶ 22.  She began working at Kaiser as a file clerk in 1989 and became a biomedical engineer in 2007.  *Id.* at ¶¶ 23, 24.  She has been a member of IUOE under the collective bargaining agreement between Kaiser and IUOE ("CBA-2").  *Id.* at ¶ 24.

Bongon alleges that IUOE failed to represent her interests when she was wrongfully denied a promotion.  *Id.* at ¶ 25.  In 2015, Bongon applied for the Lead Biomedical Engineer.  *Id.*  As the biomedical engineer with seniority in her office, she was qualified for the position.  *Id.*  However, Kaiser refused to promote her and instead promoted a male BET from a different facility.  *Id.*  Bongon is a Filipino-American female, and she alleges that she was denied the promotion because

of her gender and race, and because she had previously filed a civil lawsuit against Kaiser regarding unrelated workplace violations and inequities.  *Id.* at ¶¶ 1, 26.  Bongon complained to Kaiser and filed grievances with IUOE, but the union did not represent Bongon's interests.  *Id.* at ¶ 26.  Although IUOE representative, Mark Gong, assured her that he would process the grievances, she alleges that Gong "to this date still continues to make excuses for the fact that thus far he had failed to take any direct action on Bongon's behalf."  *Id.* at ¶ 27.

## II.   DISCUSSION

A.   Legal Standard

    1.   Motion to Dismiss

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Such a motion challenges the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. Of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering a Rule 12(b)(6) motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The plausibility standard is not "a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

    2.   Evidence Introduced Outside the Complaint

Although the unions are moving to dismiss each claim pursuant to Federal Rule of Civil Procedure 12(b)(6), they have asked the Court to take into consideration evidence outside of the complaint, including a collective bargaining agreement (CBA-3), letter of agreement (LOA) that Jay executed in January 2013, and emails and letters sent to Jay and Bongon.  IUOE Reply at 7.

United States District Court
For the Northern District of California

They contend that the additional evidence attached in their declarations should be considered because they were referenced by the complaint.  IUOE Reply at 7.  In response, Plaintiffs submitted their own declarations with new evidence, including excerpts of collective bargaining agreements (CBA-2, CBA-3).  Docket No. 27, 29.  Plaintiffs also request additional time to respond to Defendants' motions or permission to file an amended complaint.  IUOE Opp. at 2.

"When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside of the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*

Based on this standard, the Court considers three pieces of evidence regarding Plaintiff Jay's claims: (1) letter of agreement (LOA) that Jay executed in January 2013 (Gong Decl., Ex. B), (2) excerpts of CBA-2 (Jay Decl., Exs. 1, 2), and (3) Jay's termination letter (Gong Decl., Ex. H).  All three documents are referenced in the complaint.  *See e.g.,* Compl. at ¶¶ 14-15 (LOA), ¶ 14 (CBA-2), ¶ 21(termination letter).  More importantly, they all form the basis of Jay's claims.  The LOA forms the basis of Jay's claims because she alleges that the LOA is either void or that its terms were misapplied.  *Id.* at ¶¶ 15, 34.  Additionally, the collective bargaining agreement establishes the duties Kaiser and IUOE owed Jay.  *Id.* at ¶ 1.  Finally, the termination letter explains why Kaiser terminated Jay's employment and whether it breached the collective bargaining agreement.  *Id.*

For Bongon, the Court considers two pieces of evidence: (1) Excerpts of Collective Bargaining Agreement ("CBA-2") (Bongon Decl., Exs. 1, 2) and (2) Collective Bargaining Agreement ("CBA-3") (Gong Decl. Ex. C).  Both documents are referenced in the complaint.  *See e.g.,* ¶ 24 (CBA-2), ¶ 25 (CBA-3).  They also form the basis of Bongon's claims.  CBA-2 establishes the duties Kaiser and IUOE owed Bongon prior to September 18, 2015, and CBA-3 establishes the duties they owed Bongon since September 18, 2015.  *Id.* at ¶ 1.

**United States District Court**
For the Northern District of California

However, all other pieces of evidence attached by Plaintiffs and Defendants are not considered because they are not extensively referenced within the complaint and they do not form the basis of either Plaintiffs' claims.  Moreover, the Court does not consider factual allegations raised for the first time in Plaintiffs' Oppositions and Declarations.[1]

B.      State Law Claims

Plaintiffs Jay and Bongon allege two state law claims: (1) Breach of Covenant of Good Faith and Fair Dealing and (2) Unfair Business Practices.  Compl. at ¶¶ 43-49.  In the hearing, the parties clarified that Jay asserts the state claims against both SEIU and IUOE, while Plaintiff Bongon asserts the state claims against IUOE only.  The Court agrees with Defendants that all of Plaintiffs' state claims are preempted by federal labor laws, specifically § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and § 9 of the National Labor Relations Act ("NLRA").

1.      Section 301 of the LMRA

Defendants argue that Section 301 of the LMRA preempts Plaintiffs' state claims because the claims require the Court to look to and interpret the unions' collective bargaining agreement.  IUOE Mot. at 8.  Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties."  29 U.S.C. § 185(a).  Although "[s]ection 301 is on its face a jurisdictional statute," the Supreme Court has held that it "authorize[s] the federal courts to develop a federal common law of CBA [collective bargaining agreement] interpretation" and that "this federal common law preempts the use of state contract law in CBA interpretation and enforcement."  *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001) (en banc) (citing *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 451 (1957) and *Local 174, Teamsters of Am. V. Lucas Flour Co.*, 369

---

[1] For example, Jay asserts for the first time in her declaration that she should not have been subjected to a LOA because Kaiser wrongfully denied her request to transfer to a Computer Integration System ("CIS") in 2005, well before the Clinical Technology Department was eliminated.  Jay Decl. at 5.  Bongon also asserts for the first time in her Opposition that IUOE delayed processing her grievance until a new CBA (CBA-3) went into effect in late 2015, which changed how seniority is factored in the promotion process.  IUOE Opp. at 8-9.

U.S. 95, 103-04 (1962)).  The Ninth Circuit has further clarified that that the scope of § 301 preemption is limited to: (1) claims "founded directly on rights created by collective-bargaining agreements" and (2) claims "substantially dependent on analysis of a collective-bargaining agreement."  *Id.* at 689 (internal quotations omitted).

Thus, courts independently apply two tests – (1) whether the claim is founded on a CBA or (2) whether the claim is substantially dependent on a CBA.  In *Caterpillar v. Williams*, the Supreme Court held that § 301 preempts "claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'"  482 U.S. 386, 394 (internal citations omitted).  The Court held that the plaintiffs' state law contract claims were not preempted because the claims were based on "*individual* employment contracts" and were not substantially dependent upon interpretation of the collective-bargaining agreement.  *Id.* at 394-95.

First, to determine whether the asserted state right is "founded directly" on a collective bargaining agreement ("CBA"), courts examine the "legal character" of the claim.  *Id.* at 690 (citing *Livadas v. Bradshaw*, 512 U.S. 107, 123-24 (1994)).  If the legal character is such that the right exists separate and apart from any provision in the CBA, it is not preempted by § 301.  *Id.*  A state claim can be independent of CBA even if it arises from the same set of facts as a potential claim under a CBA dispute.  *Id.*

Second, a state law claim is "substantially dependen[t]" on a CBA if the claim "necessarily requires the court to interpret an existing provision of a CBA."  *Id.* at 693.  Interpretation is key; where the meaning of a contract term is undisputed, "the bare fact that a collective bargaining agreement will be consulted . . . plainly does not require the claim to be extinguished."  *Id.* at 690-91 (citing *Livadas*, 512 U.S. at 124).  In other words, if the court can resolve the claim by simply "looking to" rather than "interpreting" the CBA, the claim is not substantially dependent.  *See id.* at 691.  Moreover, a defense based on a CBA is insufficient to require preemption.  *Id.* at 690.

a.    Breach of Covenant of Good Faith and Fair Dealing

"Under California law, a claim for breach of this implied covenant [of good faith and fair dealing] is necessarily based on the existence of an underlying contractual relationship, and the

United States District Court
For the Northern District of California

essence of the covenant is that neither party to the contract will do anything which would deprive the other of the benefits of the contract." *Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1411 (1991). Courts developed this implied covenant to protect the job security of at-will employees who could be fired without cause under common law. *See id.* Because unionized employees' employment is governed by a collective bargaining agreement, however, they do not face comparable lack of job security. *See id.* As a result, courts have generally held that § 301 preempts the California state cause of action for breach of the implied covenant of good faith and fair dealing when an employee's position is governed by a collective bargaining agreement. *See, e.g., Cook v. Lindsay Olive Growers,* 911 F.2d 233, 238-39 (9th Cir. 1990); *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1286 (9th Cir. 1989).

In *Milne*, the Ninth Circuit found that a claim for the breach of implied covenant of good faith and fair dealing was preempted by § 301 of LMRA. 960 F.2d at 1411. There, former employees brought an action against their employer alleging that the employer falsely told them that their jobs were secure before terminating the employees. *Id.* at 1405. The plaintiffs alleged various state claims, including one for the breach of implied covenant of good faith and fair dealing. *Id.* Because the court would be required to interpret the collective bargaining agreement to determine the scope of the employees' rights under the employment contract, the court held that the plaintiffs' claim for breach of good faith and fair dealing was preempted. 960 F.2d at 1411.

Here, Plaintiffs' claim for breach of good faith and fair dealing is similarly founded on the rights created by the collective bargaining agreement and requires the court to interpret the CBA to determine whether the unions breached their duty. For instance, Plaintiff Jay and IUOE disagree on whether she should have been eligible for the educational requirements based on the LOA. Defendants point to the sentence that "an employee will need to demonstrate completion of 75% of the course work for the required degree by the end of the twenty-fourth month of the BET training program, in order to be considered for an extension of time to complete the degree." Gong Decl., Ex. B at 3. In contrast, Plaintiff Jay alleges that Kaiser had discretion to grant her the time extension. This requires the Court to interpret the LOA to resolve this dispute. Furthermore, the complaint itself asserts that Defendants breached the good faith requirement implicit in every

contract by preventing Plaintiffs from receiving benefits that they were "entitled to receive *under their respective CBAs.*"  Compl. at ¶ 44 (emphasis added).

Plaintiffs' citation to *Schrader v. Noll Manufacturing Company*, 91 Fed. App'x 553 (9th Cir. 2004) is distinguishable.  The plaintiff there brought a discrimination claim under FEHA, and the court noted that "state law discrimination claims *under FEHA* do not require courts to interpret the terms of a CBA and are therefore not preempted by § 301."  *Id.* (emphasis added).  Because the covenant of good faith and fair dealing claim does not exist separate and apart from the CBA and requires the court to interpret the CBA, this state claim is preempted under § 301 of LMRA and must be dismissed.

### b. Unfair Business Practices

Additionally, Plaintiffs allege that the unions engaged in "'unlawful', 'unfair', and/or 'deceptive' business practices."  Compl. at ¶ 47.  For example, Plaintiffs allege that IUOE and SEIU unlawfully discriminated against them on the basis of their race and gender by failing to represent their interests against Kaiser and by failing to file grievances on their behalf.  Compl. at ¶¶ 30, 32.  Plaintiff Jay also alleges that the unions deceived her into believing that the LOA was legally binding and misled her into believing that she would be given more time to complete her educational requirements.  *Id.* at ¶ 34.

Plaintiffs' unfair business practices claim is preempted by § 301 of the LMRA.  The complaint alleges that "[a]t its core this lawsuit presents two female coworkers . . . who had meritorious grievances that were never processed by their respective unions, and both of whom suffered intentional neglect and discriminatory treatment by those unions."  Compl. at ¶ 1.  In short, the gravamen of Plaintiffs' state claim is that Defendants failed to protect Plaintiffs' rights established under the collective bargaining agreement by failing to process their grievances and misapplying the terms of the agreement.  Because § 301 of the LMRA preempts the use of state law to interpret and enforce collective bargaining agreements, Plaintiffs' unfair business practices claim is preempted by § 301 of the LMRA and will be dismissed.  *See Cramer*, 255 F.3d at 689.  As indicated at the hearing, Plaintiffs' discrimination claim is inextricably bound up with their grievance claim.  Plaintiffs argue that Defendants failed to process their meritorious grievances in

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   violation of the CBA.  The Court will need to interpret the contract to determine whether the

2   Plaintiffs' grievances were meritorious to determine whether the unions engaged in any unlawful,

3   unfair, or deceptive practices.  Moreover, Plaintiffs also do not seek any relief that relates to

4   discrimination, but rather seeks an order prohibiting defendants from engaging unlawful or unfair

5   business acts and practices from failing to fully disclose the true facts, "an injunctive and/or

6   declaratory relief" that "defendants . . . be ordered to cease and desist from making

7   misrepresentations to the general public" and seeks "equitable monetary relief to the members or

8   the general public adversely affected by the practices at issue."  Compl. at ¶¶ 48, 49.

9        Plaintiffs do not allege an independent discrimination claim under FEHA.  This case is

10  unlike *Schrader* where the plaintiffs brought an employment discrimination suit against his

11  employer expressly under FEHA, alleging the employer invoked the drug testing provisions of the

12  CBA as a pretext to discriminate against him and retaliate for his filing of a workers'

13  compensation claim.  91 Fed. Appx. at 554.  The court held that the plaintiff's FEHA claims were

14  not preempted because the Ninth Circuit "ha[s] consistently held that state law discrimination

15  claims under FEHA do not require courts to interpret the terms of a CBA and therefore not

16  preempted by § 301."  *Id.* at 555.  The court further explained that "it would not be necessary to

17  interpret the terms of the CBA in order to adjudicate [plaintiff]'s discrimination claims, because

18  they "turn on the defendants' motives, rather than their contractual rights."  *Id.*  Here, as noted

19  above, Plaintiffs do not assert an independent discrimination claim and do not seek relief from

20  discrimination.  Rather, they allege that the Defendants failed to process their meritorious

21  grievances and misled Plaintiff Jay into believing that the LOA was valid when it was void and

22  without effect.  Thus, Plaintiffs have failed to allege a discrimination claim independent of the

23  CBA.  The claim is therefore preempted.

24       2.    Section 9 of NLRA

25       The Court finds that Plaintiffs' state claims are also preempted pursuant to § 9 of the

26  NLRA.  This section provides:

27              Representatives designated or selected for the purposes of collective
                bargaining by the majority of the employees in a unit appropriate for
28              such purposes, shall be the exclusive representatives of all the

**United States District Court**
For the Northern District of California

> employees in such a unit for the purposes of collective bargaining in respect of rates of pay, wages, hours of employment, or other conditions of employment . . .

29 U.S.C. § 159(a). Section 9 gives rise to a duty on the part of union to fairly represent its members without hostility or discrimination to any members. *Vaca v. Sipes*, 386 U.S. 171, 182 (1967). Because § 9(a) of the NLRA defines and imposes the duty of fair representation to unions, it displaces state laws that impose the same duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative. *Adkins v. Mireles*, 526 F.3d 531, 539 (9th Cir. 2008). Thus, the court in *Adkins* explained that "[t]o bring a successful state law action, aggrieved workers must make a showing of *additional duties* . . . beyond the normal incidents of the union-employee relationship." *Id.* (emphasis added). "Such duties must derive from sources other than the union's status as its members' exclusive collective bargaining representative, such as an express provision of the CBA or a collateral contract." *Id.*

To determine if a state claim is preempted under § 9 of NLRA, a court needs to determine whether there is an independent source other than the Union's status as its members' exclusive collective bargaining representative. For example, this court in *Martinez v. Kaiser Foundation Hospitals* found that plaintiff's discrimination claim under FEHA was not preempted under § 9 because the duty to not discriminate arises from the duty under FEHA. No. C-12-1824 EMC, 2012 WL 2598165, at *7-*8. However, the court held that the plaintiff's claim for intentional infliction of emotional distress was preempted because the alleged outrageousness of the union's actions is predicated on its status as plaintiff's exclusive collective bargaining representative. *Id.* at *9. For the same reasons stated in the above section under § 301, Plaintiffs' discrimination claim alleges that Defendants failed to process their grievances in violation of their duty as the collective bargaining representative.

Plaintiffs have not demonstrated that Defendants have breached any duty beyond the normal incidents of the union-employee relationship. Plaintiff Jay alleges that Defendants failed to process her grievances and misrepresented the terms of the letter of agreement, which became part of the CBA as Appendix VIII. Compl. at ¶ 1, Jay Decl. Ex. 1 (CBA-2). Similarly, Plaintiff Bongon alleges that Defendants failed to process her grievances regarding her promotion. All of

**United States District Court**
For the Northern District of California

Plaintiffs' allegations relate to Defendants' breach of duty to fairly represent Plaintiffs in their capacity as union representatives, and as a result, both state claims are preempted by § 9 of NLRA.

C.   Duty of Fair Representation

    1.   Plaintiff Jay

        a.   Defendant SEIU

    SEIU argues that Jay's fair representation claim is time-barred because SEIU discontinued representing Jay in January 2013.  SEIU Opp. at 12.  There is a six-month statute of limitations for claims alleging a breach of the duty of fair representation.  *See Del Costello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 154-55, 169 (holding that statute of limitations for duty of fair representation in cases in a Section 301 hybrid action is six months.)  Under Ninth Circuit law, "the six-month period generally begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union."  *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986).  While a statute of limitations assertion is an affirmative defense, a defendant may still raise a motion to dismiss based on the defense if the running of the limitations period is apparent on the face of the complaint.  *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (stating that "[i]f the running of a statute is apparent on the face of the complaint, the defense may be raised by a motion to dismiss").

    Here, SEIU argues that Jay's claims against itself should be time-barred because Jay should have known more than six months prior to the filing of this complaint that SEIU was not going to pursue her grievances.  SEIU Mot. at 12-13.  The Court agrees with this assessment.  Jay should have known that SEIU was not going to pursue her grievances at the latest by January 15, 2013, the date she transferred to IUOE.  Thus, Jay should have known well over six months prior to filing this complaint whether SEIU was in breach of its duty of fair representation, a fact she does not dispute in her Opposition.  Because she does not have any fair representation claim against SEIU after January 15, 2013, Jay's fair representation claim against SEIU is dismissed with prejudice.

b.    Defendant IUOE

i.    Legal Standard for Fair Representation Claim

Under Section 301, "[a] union owes a duty of fair representation to those it represents, and an employer must honor the terms of a CBA to which it is a party." *Bliesner v. Commc'n Workers of Am.*, 464 F.3d 910, 913 (9th Cir. 2006).  When these duties are violated, "[a]n aggrieved party may bring a hybrid fair representation/§ 301 suit against the union, the employer, or both." *Id.* "In order to prevail in any such suit, the plaintiff must show that the union and the employer have both breached their respective duties." *Id.*  Thus, "[w]hether the defendant is the union or the employer, the required proof is the same: The plaintiff must show that there has been a breach of the duty of fair representation and a breach of the CBA." *Id.* at 913-14.

IUOE argues that Jay's fair representation claim should be dismissed because she fails both prongs: Jay does not allege that Kaiser violated the CBA and she only alleges in a conclusory fashion that IUOE breached its duty of fair representation.  IUOE Mot. at 11-13.

ii.    Kaiser's Breach of CBA

IUOE asserts that Jay has not alleged that Kaiser violated any provision of CBA in her complaint.  *Id.* at 12.  In the complaint, Jay states that Kaiser had the discretion to determine whether to grant employees a time extension to complete the requirements of the LOA.  Compl. at ¶ 15.  Thus, based on Jay's own allegations, Kaiser's denial of a time extension is not a violation of the CBA.  The complaint alleges that "[t]he express language of the LOA provided that the requirement could be extended at Kaiser's discretion.  While the complaint alleges that Jay was assured by Kaiser and SEIU that the time period would indeed be extended for Jay if that became necessary," that does not assert a breach of the CBA.

Moreover, IUOE asserts that Jay could not be considered for an extension under the terms of the LOA.  IUOE Mot. at 12.  The LOA specified that employees may be granted a time extension to complete the coursework to qualify for the BET position if they completed 75 percent of the coursework within 24 months.  Gong Decl., Ex. B at 3 ("An employee will need to demonstrate completion of 75% of course work for the required degree by the end of the twenty-fourth month of the BET training program, in order to be considered for an extension of time to

**United States District Court**
For the Northern District of California

1   complete the degree.").  Because Jay had only completed 36.7 percent of the required courses.

2   based on Kaiser's termination letter,[2] Jay would not have been eligible for consideration of a time

3   extension.  Gong Decl., Ex. H.

4        Jay responds with several arguments.  First, she alleges that she should not be subject to

5   the educational requirements because the LOA was void and without force and effect.  Compl. at ¶

6   34.  In the complaint, Jay asserts that she was not an authorized representative of SEIU and

7   Defendants were aware of this fact at all times.  *Id.*  However, she does not explain why this fact

8   makes the LOA void.  Furthermore, the LOA, as attached in Defendants' declaration, appears to

9   be signed by all parties, including Jay, a representative of SEIU, and Kaiser.  Gong Decl., Ex. B

10  (LOA).  Because Jay has not alleged sufficient facts to make a plausible claim under the pleading

11  standard set by *Iqbal* and *Twombly*, her assertion that LOA is void is not adequately supported.

12       Second, Jay argues that IUOE misinterpreted the language of the LOA.  According to Jay,

13  the LOA provided that the time period to complete the educational requirements could be

14  extended.  Compl. at ¶ 15.  Additionally, both representatives from Kaiser and SEIU assured Jay

15  that the time period would be extended for her.  *Id*.  Although the LOA states that employees may

16  be granted a time extension, it further specifies that an employee will need to demonstrate

17  completion of 75 percent of the required degree within 24 months to be considered for an

18  extension of time.  Gong Decl., Ex. B at 3.  Because Jay has not addressed this language in the

19  LOA (or fails to allege she completed this 75% requirement), her argument that IUOE

20  misinterpreted the language lacks support.

21       Jay also argues that she should not be subject to the educational requirements because the

22  new CBA (CBA-3) no longer requires educational requirements to qualify for a BET position.

23  Compl. at ¶ 20.  However, Jay does not explain why she should have been subject to CBA-3 when

24  she was terminated.  Furthermore, she does not explain whether Kaiser's enforcement of the

25

26  _____

27  [2] Kaiser's termination letter states that "[a]ccording to your transcripts, 24 months into the BET program, you completed 11 credits which puts you at 36.7 percent of educational course requirements."  Gog Decl., Ex. H.  The Court considers the termination letter because it is referenced in the Complaint and forms the basis of Jay's claim.  *See supra* Section A. 2. Evidence Introduced Outside the Complaint.

28

1  educational requirement would have been in breach of CBA-3.  Thus, this argument is not

2  adequately supported.

3  Finally, Jay argues in her Opposition that she should not have been subject to the LOA

4  because Kaiser denied her transfer to the CIS unit in 2005.  IUOE Opp. at 4.  Because this

5  allegation was not raised in the complaint, the Court cannot consider these arguments.  Even if the

6  Court were to consider the new allegation, however, it is not clear why Jay would not be subject to

7  the educational requirements.  In January 2013, she was working as a Radiological Film Processer

8  in the Clinical Technology Department, and she signed the LOA.

9  Thus, the Court agrees with IUOE that Jay has failed to allege that Kaiser breached its

10  CBA and must dismiss Jay's fair representation claim.  However, the Court will allow Jay to

11  amend her complaint so that she can further explain why the LOA is void, why she was exempt

12  from the 75 percent requirement, or why she should have been exempt from the BET educational

13  requirement under CBA-3.  She must allege specific facts and state a plausible claim as required

14  by *Twombly/Iqbal*.

15  iii.    IUOE's Breach of Duty of Fair Representation

16  Even if Jay successfully alleged that Kaiser violated the CBA, she must also allege that the

17  union breached its duty of fair representation to prevail in her claim.  The Court agrees with IUOE

18  that Jay has not alleged sufficient facts and only makes conclusory allegations that the union

19  breached its duty of fair representation.

20  "[A] union breaches its duty of fair representation if its actions are either 'arbitrary,

21  discriminatory, or in bad faith.'"  *Simo v. Union of Needletrades*, 316 F.3d 974, 981 (9th Cir.

22  2003).  "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the

23  time of the union's actions, the union's behavior is so far outside a wide range of reasonableness

24  as to be irrational."  *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991) (internal citations

25  omitted).  Thus, a union "need not process a meritless grievance."  *Galindo*, 793 F.2d at 1513.  The

26  union acts "arbitrarily" when it ignores a meritorious grievance or processes it in a perfunctory

27  fashion.  *See Vaca*, 386 U.S. at 191.  Moreover, a union's conduct is discriminatory and thus

28  arbitrary if there is "substantial evidence of discrimination that is intentional, severe, and unrelated

to legitimate union objectives." *Amalgated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v. Lockridge*, 403 U.S. 274, 301 (1971).  Finally, its conduct is in bad faith if there is "substantial evidence of fraud, deceitful action or dishonest conduct."  *Id.* at 299.

Here, Jay has not pleaded facts upon which the Court can draw a reasonable inference that IUOE violated its duty of representation.  First, Jay asserts that IUOE's conducts were arbitrary because the union ignored her meritorious grievances and complaints and processed her complaints in a perfunctory manner.  Compl. at ¶ 32.  However, because Jay has failed to demonstrate that Kaiser breached its CBA, she has also failed to demonstrate that her grievances were meritorious.  Because IUOE need not process a meritless grievance, Jay has failed to demonstrate that the union acted arbitrarily in not pursuing her grievance regarding her termination of employment.

Jay also has not alleged "substantial evidence" of bad faith or discrimination.  Jay asserts that IUOE "acted in bad faith and discriminated against Jay on the basis of her gender and race by failing to represent her in the manner that . . . IUOE represented other union members who were not female and who were not African-American."  Compl. at ¶ 30.  She also asserts that IUOE's conduct was "in bad faith, dishonest, and discriminatory" (Compl. at ¶ 30), "willful, wanton, and malicious" (Compl. at ¶ 31), "fraudulent, deceitful, and dishonest . . . and/or motivated by personal animus toward Jay" (Compl. at ¶ 32).  However, she does not provide any facts to support such broad allegations against IUOE.  For example, she has not alleged that IUOE treated the three employees who signed the LOA with Jay in January 2013 any differently.  The Court agrees with IUOE that Jay offers nothing more than "a formulaic recitation of a cause of action's elements" of the duty of fair representation to support her claim, *Twombly*, 550 U.S. at 545, and thus, dismisses her fair representation claim against IUOE with leave to amend to provide additional facts showing bad faith, discrimination, or arbitrary conduct.

    2.    <u>Plaintiff Bongon</u>

        a.    <u>Failure to Exhaust</u>

As an initial matter, IUOE moves to dismiss Plaintiff Bongon's fair representation claim for failure to exhaust administrative remedies.  IUOE Mot. at 15.  "As a general rule, members of

United States District Court
For the Northern District of California

a collective bargaining unit must first exhaust contractual grievance procedures before bringing an action for breach of the collective bargaining agreement." *Carr v. Pac. Mar. Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990). "This requirement applies with equal force to claims brought against a union for breach of the duty of fair representation." *Id.* However, there are two situations in which a union's breach of the duty of fair representation excuses the exhaustion requirement. *Id.* at 1319. First, exhaustion is not required "where the union has sole power under the contract to invoke the higher stages of the grievance procedure, and if the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance." *Id.* (emphasis in original) (citations omitted). Second, "where grievants allege a breach of duty of fair representation with regard to negotiating the collective bargaining agreement," exhaustion of contractual grievance procedures may not be required. *Id.* (citations omitted).

Prior to *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc), the Ninth Circuit considered a motion to dismiss for failure to exhaust administrative remedies as an unenumerated motion to dismiss. *See Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003). In evaluating whether a plaintiff has failed to exhaust, a court could rely on evidence outside of the pleadings and may resolve disputed issues of fact. *See id.* However, in *Albino*, the Ninth Circuit overruled these prior holdings. Based on the Supreme Court's holding in *Jones v. Bock*, 549 U.S. 199 (1997), the Ninth Circuit held that the exhaustion defense should no longer be considered as an unenumerated Rule 12(b) motion. 747 F.3d at 1168-69. Instead, the exhaustion question should be determined in a motion for summary judgment, and if necessary, by a decision by the court following the summary judgment on disputed questions of material fact.[3] *Id.* at 1171. At the hearing, Defendants argued that *Albino*'s holding is limited to the Prison Litigation Reform Act ("PLRA"). This argument ignores the Ninth Circuit's clarification that its holding was not limited

---

[3] Defendant relies on *Ayala v. Pacific Maritime Ass'n*, No. C 08-0119-TEH, 2008 WL 1886021 (N.D. Cal. Apr. 25, 2008) to claim that the Court "may look beyond the pleadings to determine whether Bongon exhausted her contractual remedies." IUOE Mot. at 17 (internal quotations omitted). However, *Ayala* was decided before *Albino*, and it relied on *Wyatt v. Terhune*, which was explicitly overruled in *Albino*. *See* 2008 WL 1886021, at *5.

**United States District Court**
For the Northern District of California

to the PLRA, but was appropriate in other context, including those involving Individuals with Disabilities Education Act, Food and Drug Administration, and Labor Management Relations Act (LMRA). *Id.* However, the court specified a narrow exception "in the rare event that a failure to exhaust is clear on the face of the complaint." *Id.* at 1166. In such a case, defendants may bring the exhaustion defense in a Rule 12(b) motion to dismiss. *Id.*

In a declaration filed with its Motion, IUOE introduced several exhibits not referenced in the complaint to demonstrate that Bongon has not exhausted her contractual remedies. Gong Decl., Ex. F. The Court cannot consider such external evidence without converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment.

Based on the complaint alone, the Court cannot determine whether Bongon has failed to exhaust her contractual remedies. Bongon pleads in the alternative, alleging that she "exhausted all administrative and contractual remedies required under applicable law," or alternatively, that she is "excused from exhausting certain administrative and contractual remedies" because exhaustion would have been futile. Compl. at ¶ 9. Bongon's first assertion that she has exhausted all remedies is too conclusory because she merely asserts that she exhausted the remedies without explaining the steps she has taken to date. *Id.* at ¶ 9. However, Bongon's assertion that exhaustion would have been futile is plausible enough to survive a motion to dismiss. She alleges that IUOE repudiated CBA grievance procedures and breached its duty of fair representation. *Id.* at ¶ 27. Specifically, Bongon alleges that she asked IUOE to file grievances, but the union failed to take any direct action on her behalf. *Id.* As the Ninth Circuit explained in *Carr*, union members are not required to exhaust contractual remedies if the union has the sole power to invoke the higher stages of the grievance procedure and the union member has been prevented from her contractual remedies by the union's wrongful refusal. 904 F.2d at 1319. Because Bongon alleges that IUOE wrongfully refused her from putting forward her grievances, her assertion that exhaustion would have been futile survives this motion to dismiss,[4] although her fair representation claims must still be dismissed, as discussed below.

---

[4] While the Court cannot consider external evidence that Defendants supplied for this motion, Plaintiff should consider her Rule 11 obligation in amending her pleadings.

b.    Merits

The Court will dismiss Bongon's fair representation claim because she only alleges in a conclusory fashion that IUOE breached its duty of fair representation and fails to state sufficient facts to demonstrate that IUOE acted arbitrarily, discriminatorily, or in bad faith.

First, Bongon does not provide enough facts in the complaint for the Court to draw a reasonable inference that IUOE acted arbitrarily.  Bongon asserts that she was qualified for the lead position as she was a biomedical engineer with seniority.  Compl. at ¶ 25.  However, she alleges that Kaiser denied her the promotion and IUOE failed to take any direct action on her behalf.  *Id.* at ¶¶ 25, 27.  Although Bongon argues that Kaiser's denial of her promotion was in "a direct violation of the terms set forth in CBA-2 and CBA-3," she does not explain why.  *Id.* at ¶ 27.  Specifically, she does not address why Kaiser's actions were in violation of CBA-3, which specifies that "the Employer shall select the preferred candidate from the three most senior qualified applicants for the position, provided the employee has the ability and qualifications to perform the work satisfactorily . . ."  Gong Decl., Ex. C at 13, ¶ 60.

Bongon also fails to assert that IUOE acted in bad faith or discriminatorily.  Bongon merely alleges that IUOE "acted in bad faith and discriminated against Bongon on the basis of her gender and race" and that IUOE retaliated against her for her previous complaints and lawsuits against Kaiser, without alleging specific facts.  *Id.* at ¶¶ 26, 41.  Thus, her allegation that IUOE acted discriminatorily or in bad faith is too conclusory and must be dismissed.  The complaint only alleges that (1) a male BET from a different facility got promoted instead of Bongon and that that (2) "Bongon is informed and believes, and thereon alleges, that Kaiser and IUOE failed to promote her . . . in large part because Bongon had previously complained about unrelated workplace violations and inequities committed by Kaiser against Bongon."  Compl. at ¶¶ 25, 26.  She does not provide any factual allegations in the complaint to support her claim that Kaiser or IUOE acted discriminatorily or in bad faith.

In her Opposition, Bongon argues for the first time that IUOE acted in arbitrarily, discriminatorily, or in bad faith because the union delayed processing her grievance.  IUOE Opp. at 9.  Although CBA-2 was in effect at the time the lead engineer position was open, Bongon

contends that IUOE refused to process her grievance until the new CBA (CBA-3) went into effect. *Id.* She also contends the CBA-3 changed the way seniority factors into the promotion process, and Kaiser promoted a male biomedical engineer under the new terms in CBA-3. *Id.* The Court cannot decide this issue because Bongon has not alleged these facts in her complaint. Thus, the Court dismisses Bongon's fair representation claim with leave to amend.

D. <u>Punitive Damages and Attorney's Fees</u>

The Court strikes Plaintiffs' claims for punitive damages and attorney's fees.

In a claim against a union for breach of duty of fair representation, the court "cannot award exemplary or punitive damages." *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 587 (1990). Because Plaintiffs' state claims are dismissed with prejudice, there is no basis for their prayer for punitive damages. Thus, their claim for punitive damages is stricken.

Plaintiffs also may not seek attorney fees. Plaintiffs pray "for reasonable attorney fees, including those fees permitted by 42 U.S.C. § 1981." Compl. at 15. Because Plaintiffs have not alleged any claims under 42 U.S.C. § 1981, there is no basis for attorney fees under § 1981. Moreover, they may not seek attorney's fees under the fair representation claim because it violates the American rule. In a hybrid § 301 suit against the employer and union, the union may be liable for the attorney's fees that the employee incurred in prosecution of his claim against the employer. In *Dutrisac v. Caterpillar Tractor Co.*, the Ninth Circuit assessed attorney's fees to a union when a plaintiff sued his employer for wrongful termination and the union breached its duty of representation by failing to file the employee's grievance on time. 749 F.2d 1270, 1272 (9th Cir. 1983). The court explained that "the expense [the plaintiff] incurred in obtaining legal representation in the district court in his contractual grievance against [the employer] is not merely a result of the harm that [the union] did him; it is the harm itself." *Id.*; *see also Zuniga v. United Can Co.*, 812 F.2d 443, 454 (affirming an award of attorney fees against the union in a § 301 suit because "one of the principle elements of damages is the amount [the plaintiff] was forced to expend in attorney fees to do that which the union was obligated but failed to do.").

However, the court in *Dutrisac* limited its holding and held that only attorney's fees incurred *against the employer* may be awarded. Specifically, the court noted in a footnote that the

case would raise different issues if the plaintiff were awarded attorney's fees in prosecuting his claim against the union. *Id.* at n.3. In such a case, awarding attorney's fees to the plaintiffs would penalize the union for litigating the issue of whether it breached its duty of fair representation. *Id.* Such an award would violate the American rule and would be improper unless it fell within the common benefit exception. *Id.* Here, Plaintiffs have brought a § 301 suit against the unions, but not their employer. It is not seeking from the union fees it incurred in litigating against the employer as a result of the union's breach of duty. Thus, Plaintiffs may not seek attorney's fees to prove that the unions breached their duty of fair representation.

### III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss. Plaintiffs' two state claims are dismissed with prejudice. Plaintiff Jay's fair representation claim against SEIU is dismissed with prejudice because her claim is time-barred. However, both Jay's and Bongon's claims for breach of duty of fair representation against IUOE are dismissed with leave to amend. In their amended complaint, Plaintiffs should allege how Kaiser breached the collective bargaining agreement and how IUOE acted in an arbitrary, discriminatory, or bad faith manner. The Court also strikes Plaintiffs' claim for punitive damages and attorney's fees. Any amended complaint shall be filed within thirty (30) days of the date of this order.

This order disposes of Docket Nos. 9 and 12.

**IT IS SO ORDERED**.

Dated: August 19, 2016

EDWARD M. CHEN
United States District Judge