United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA E. JAY, et al., | Case No.  16-cv-01340-EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| SERVICE EMPLOYEES INTERNATIONAL UNION - UNITED HEALTH CARE WORKERS WEST, et al., | Docket No. 46 |
| Defendants. | |

## I.   INTRODUCTION

In this case Plaintiffs Sheila Jay and Robin Bongon have sued Defendant International Union of Operating Engineers - Stationary Engineers Local 39 ("IUOE" or "the Union"), asserting claims for violations of the duty of fair representation under the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, and for discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), Cal Gov't Code § 12940 *et seq*.  Previously this Court dismissed Plaintiffs' duty of fair representation claim with leave to amend.  Docket No. 42, p. 13-21 ("Order dismissing original complaint").  Plaintiffs filed a First Amended Complaint ("FAC"), Docket No. 45, which IUOE now moves to dismiss.  Docket No. 46 ("Mot.").

After considering the parties' briefs and oral arguments, the Court **DENIES** the motion as to Jay's duty of fair representation claim, **GRANTS** the motion as to Bongon's duty of fair representation claim and **GRANTS** the motion as to Plaintiffs' FEHA claims.

## II.   FACTUAL BACKGROUND

A.   Plaintiff Jay

Plaintiff Sheila Jay is a former employee of Kaiser Foundation Hospitals, Inc. ("Kaiser").

United States District Court
For the Northern District of California

FAC ¶ 11.  Jay was a biomedical engineer in the film processing department at Kaiser and a member of the Service Employees International Union -  United Healthcare Workers West, Local 250 ("SEIU") beginning in 1990.  FAC ¶¶ 22, 23.  In January 2013, Kaiser eliminated Jay's position.  FAC ¶ 13.  Soon thereafter, Kaiser and four members of the SEIU, including Jay, signed a Letter of Agreement ("LOA") giving Jay and three other employees the option of transferring to a Biomedical Engineering Technician ("BET") position.  Docket No. 48, Exhibit A (LOA).  The BET position was represented by IUOE; Jay accordingly joined the Union, which became her exclusive bargaining representative.  LOA at p.1; FAC ¶¶ 13-15.

The Union's 2012-2015 CBA with Kaiser ("the 2012 CBA") provided in an appendix that the BET position required an associate's degree in electronics and a minimum of four years' work experience in a highly skilled electronic service job.  2012 CBA p.6, 43.  Previously, on October 23, 2012, Kaiser and the IUOE had signed a Memorandum of Understanding ("MOU") to waive the educational requirements for the BET position for four Radiological Film Processor Technicians (the employee signatories of the later LOA).  Docket No. 48, Exhibit A (MOU).  The LOA, signed to effectuate the MOU, agreed to waive these requirements for Jay and three other employees, and instead required them to obtain an associate's degree in electronics within the program's thirty month training period.  FAC ¶ 13; LOA at 3.  The LOA further provided that the time to obtain the required degree "may be extended" if the employee completed 75% of the course work for the degree within twenty-four months of the training period.  LOA at 3.

On September 18, 2015 a new CBA went into effect ("the 2015 CBA").  FAC ¶ 13.  The 2015 CBA, unlike the 2012 CBA, does not contain an appendix listing the educational requirement of the BET position.  *Compare* 2012 CBA, p. 43-45, *with* 2015 CBA.  On October 16, 2015, Kaiser terminated Jay for allegedly failing to complete 75% of the educational coursework for an associate's degree of electronics at Laney College after starting the BET training program in February 2013 (*i.e.*, more than twenty four months later).  FAC ¶ 14.

In the FAC, Jay raises a number of allegations concerning these events.  First, she maintains that the CBA provision requiring the completion of an associate's degree within thirty months was no longer in effect when she was fired on October 16, 2015.  FAC ¶ 13.  Jay argues

United States District Court
For the Northern District of California

that Kaiser agreed to eliminate the educational requirement by omitting it from the 2015 CBA. FAC ¶ 13.  She contends that the omission of the requirement from the 2015 CBA meant that the LOA was void since the LOA was meant to effectuate the now eliminated BET requirements of the 2012 CBA.  FAC ¶ 16.  As a result, Jay should not have been fired for failing to comply with the LOA's requirements.  FAC ¶¶ 11, 14.  She further alleges that the Union knew of these changes, and thus knew that she was not required to comply with the LOA.  FAC ¶ 16.

Second, Jay contends that in any event, she had completed more than 75% of the course requirements in the twenty four month period due to online coursework.  FAC ¶ 17.  Prior to enrolling in the Laney College program, she enrolled in an online electronic engineering program with the Cleveland Institute of Electronics in the spring of 2013.  FAC ¶ 17.  She completed two portions of the course but in fall of 2013, the cost of continuing became cost prohibitive.  FAC ¶ 17.  In January 2014, Jay alleges she met with Craig Finley and Glen Marrow, as well as other peer group evaluators employed by Kaiser as part of a periodic review, and that they approved of Jay starting the Laney College program in spring of 2014 with a completion date of May 28, 2016.  FAC ¶ 17.  Finley subsequently denied "giving her permission and sought to terminate Jay."  FAC ¶ 17.  Jay complained to IUOE representative Mike Gong, but he failed to conduct an investigation.  FAC ¶ 17.

Third, Jay contends that the stated reason for her firing was a pretext for discrimination on the basis of "race, gender, seniority, age, [and] engaging in protected activity."  FAC ¶ 14.  She bases this claim on the allegation that another signatory to the LOA, Jason Ponce, who is Caucasian and has less seniority than Jay, was given an extension to complete the coursework even though he had not completed 75% in the twenty-four month period.  FAC ¶ 14.  She further alleges that IUOE and Kaiser provided Mr. Ponce with more support than was provided to her.  FAC ¶ 14.

In sum, Jay alleges that IUOE collaborated with Kaiser to terminate her under a CBA provision no longer in effect.  FAC ¶ 13.  Jay states that IUOE knew she was not required to comply with the educational requirements, and, as a result, knew she had a meritorious defense to a termination which it arbitrarily chose not to protest.  FAC ¶ 16.  She also alleges that IUOE

arbitrarily and capriciously failed to fully investigate her grievance and failed to follow its normal practices in doing so.  FAC ¶ 12.  She contends that the IUOE acted in a bad faith, discriminatory, perfunctory and grossly negligent manner in refusing to process her grievance, which prevented her from exhausting her contractual remedies.  FAC ¶¶ 7, 13.  Jay further states that IUOE acted in bad faith by failing to represent her in a way the union represented other members who were not female or African American.  FAC ¶ 32.

B.    <u>Plaintiff Bongon</u>

Plaintiff Robin Bongon has worked as a biomedical engineer in the Clinical Technology department at Kaiser since 2007.  FAC ¶ 22.  She has been a member of IUOE for eight years and was subject to the 2012 CBA and the 2015 CBA.  FAC ¶ 9.  In August 2015, the Lead biomedical engineer at Kaiser's Walnut Creek facility gave notice of retirement.  FAC ¶ 28.  Bongon alleges the 2012 CBA mandates that in promotions to the Lead Position, qualified applications from the same facility with seniority will prevail.   FAC ¶ 28.  In contrast, the 2015 CBA changed the way in which lead positions were selected.  FAC ¶ 19.  That agreement specifies that in promotions to Lead Position, Kaiser would select from the three most senior qualified applicants, and that vacant positions should be posted for seven days and bid by seniority.  FAC ¶ 19.  Bongon alleges that she "was qualified for the Lead Position based upon seniority and facility preference but Kaiser refused to promote her to the position."  FAC ¶ 28.  Specifically, she claims that she was entitled to promotion under the 2012 CBA, but that Kaiser delayed in filling the Lead Position until the 2015 CBA went into effect so they could deny her the promotion in retaliation for a prior discrimination and harassment suit she filed against Kaiser.  FAC ¶ 20.  Kaiser ultimately promoted a male BET from a different facility to the lead position.  FAC ¶ 28.

As to IUOE, Bongon alleges that IUOE denied her fair representation by opposing her efforts to seek redress through the grievance process.  FAC ¶ 29.  Specifically, the FAC alleges that IUOE delayed filing a grievance until January 22, 2016 (*i.e.*, after the 2015 CBA went into effect) to deny her the promotion.  FAC ¶ 32.  Bongon also alleges that IUOE acted in bad faith by failing to represent her in a way the union represented other members who were not female or Filipino.  FAC ¶ 32.

### III.   PROCEDURAL HISTORY

Jay and Bongon filed suit on March 18, 2016 against the SEIU and the IUOE ("the Defendants") alleging state claims for Breach of the Covenant of Good Faith and Fair Dealing and Unfair Business Practices.  Docket No. 1 ¶¶ 43-49.  The Plaintiffs also alleged a breach of §§ 9 and 301 of the LMRA.  Docket No. 42 a t6.  The Defendants filed a motion to dismiss the complaint on May 26, 2016, which this Court granted on August 19, 2016.  Docket Nos. 22, 42.

In its order granting the Union's motion to dismiss, the Court determined that the case against SEIU was time barred and that the NLRA preempted the state law claims for Breach of the Covenant of Good Faith and Fair Dealing and Unfair Business Practices.  Docket No. 42 at 6.  The Court thus dismissed these claims with prejudice.  The Court dismissed the § 301/fair representation claim against IUOE with leave to amend.  *Id.* at 21.  As to Jay's § 301/fair representation claim, the Court held that she had failed to allege that Kaiser had breached the CBA because her claim that the LOA was "was void and without force and effect" was not supported by sufficient factual allegations.  *Id.* at 14-15.  The Court further held that Jay had failed to allege that the Union breached its duty of fair representation; she could not allege that the union acted arbitrarily in declining to process her grievance because she had not sufficiently alleged that Kaiser breached the CBA, and she did not "provide any facts to support . . . broad allegations" of race and gender discrimination on the part of the union.  *Id.* at 16.  As to Bongon's § 301/fair representation claim, the Court similarly held that her claim that the Union "acted discriminatorily or in bad faith" was unsupported by specific factual allegations and was therefore "too conclusory."  *Id.* at 19.

On September 19, 2016, Plaintiffs' filed their FAC, alleging violations of the duty of fair representation and of FEHA.  Docket No. 45.  Currently pending before this Court is IUOE's motion to dismiss the FAC.

### IV.   DISCUSSION

A.   Motion to Dismiss

   1.   Legal Standard

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim

United States District Court

For the Northern District of California

1    upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Such a motion challenges the legal

2    sufficiency of the claims alleged in the complaint.  *See Parks Sch. Of Bus., Inc. v. Symington*, 51

3    F.3d 1480, 1484 (9th Cir. 1995).  In considering a Rule 12(b)(6) motion, a court must take all

4    allegations of material fact as true and construe them in the light most favorable to the nonmoving

5    party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid

6    a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While a

7    complaint need not allege detailed factual allegations, it "must contain sufficient factual matter,

8    accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

9    662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has

10   facial plausibility when the plaintiff pleads factual content that allows the court to draw the

11   reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The plausibility

12   standard is not "a probability requirement, but it asks for more than a sheer possibility that a

13   defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

14          2.      Evidence Introduced Outside the Complaint

15          Although IUOE moves to dismiss each claim pursuant to Rule 12(b)(6), IUOE asks the

16   Court to take into consideration evidence outside of the complaint, including: a mutual

17   understanding and agreement (MOU) (Gong Decl., Ex. A); a letter of agreement (LOA) that Jay

18   executed in January 2013 (Gong Decl., Ex. B); two collective bargaining agreements (the 2012

19   CBA, Gong Decl., Ex. C, and the 2015 CBA, Gong Decl., Ex. G); a grievance filed on behalf of

20   Bongon (Gong Decl., Ex. D); a September 18th letter informing Jay of her impending termination

21   (Gong Decl., Ex. E); and Jay's termination letter (Gong Decl., Ex. F).  Docket No. 46, p.1

22   ("Mot."); Docket No. 48 (Gong Decl.).  In response, Plaintiffs submitted their own declarations

23   with new evidence, including a contract voting package and a job post for the BET position.

24   Docket No. 52 (Jay's declaration and contract voting package); Docket No. 53 (Bongon's

25   declaration and job post).

26          "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence

27   outside of the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for

28   summary judgment, and it must give the nonmoving party an opportunity to respond." *United*

United States District Court
For the Northern District of California

*States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment." *Id.*

Based on this standard, the Court will consider the following pieces of evidence regarding Jay's claims: letter of agreement (LOA) that Jay executed in January 2013 (Gong Decl., Ex. B); the 2012 and 2015 CBAs (Gong Decl., Ex. C & G); Jay's termination letter (Gong Decl., Ex. F); a mutual understanding and agreement (MOU) (Gong Decl., Ex. A). All these documents are referenced in the FAC. *See e.g.*, FAC ¶ 11 (termination letter), ¶ 13 (2012 CBA & 2015 CBA), ¶ 14 (LOA), ¶ 15 (MOU). More importantly, they all form the basis of Jay's claims. The LOA forms the basis of Jay's claims because she alleges that the LOA is either void or that its terms were misapplied. *Id.* at ¶¶ 13-15. Additionally, the collective bargaining agreements establish the duties Kaiser and IUOE owed Jay. *Id.* at ¶ 13. The termination letter explains why Kaiser terminated Jay's employment and is relevant to whether Kaiser breached the collective bargaining agreement. *Id.* at ¶ 11.

For Bongon, the Court will consider the 2012 and 2015 CBAs, and a grievance filed on behalf of Bongon (Gong Decl., Ex. D) because they are referenced in the FAC. *See e.g.*, FAC ¶ 18 (2012 CBA), ¶ 19 (2015 CBA), ¶ 28 (Bongon's grievance). They also form the basis of Bongon's claims. The 2012 CBA establishes the duties Kaiser and IUOE owed Bongon prior to September 18, 2015, and the 2015 CBA establishes the duties they owed Bongon since September 18, 2015. *Id.* at ¶ 1. The grievance letter forms the basis of Bongon's claim that IUOE failed to process her grievance in a timely manner.[1] *Id.* at ¶ 28.

   3.   Legal Standard for Fair Representation Claim

Under Section 301 of the Labor Management Relations Act ("LMRA"), "[a] union owes a duty of fair representation to those it represents, and an employer must honor the terms of a CBA

---

[1] Formal judicial notice of other documents in the record is not appropriate, but the Court below references an email from Bongon to her union representative. Bongon has not disputed the authenticity of this email.

United States District Court
For the Northern District of California

to which it is a party." *Bliesner v. Commc'n Workers of Am.*, 464 F.3d 910, 913 (9th Cir. 2006). When these duties are violated, "[a]n aggrieved party may bring a hybrid fair representation/§ 301 suit against the union, the employer, or both.  In order to prevail in any such suit, the plaintiff must show that the union and the employer have both breached their respective duties." *Id*.  Thus, "[w]hether the defendant is the union or the employer, the required proof is the same: The plaintiff must show that there has been both a breach of the duty of fair representation and a breach of the CBA." *Id*. at 913-14.

        a.    <u>Jay</u>

           i.    <u>Violation of the CBA</u>

IUOE argues that Jay has not sufficiently alleged that Kaiser breached the CBA in the FAC.  Mot. at 9.  In the first place, IUOE contends that Jay has failed to demonstrate why her termination should be subject to the 2015 CBA, rather than the 2012 CBA.  *Id*. at 9.  IUOE maintains that the LOA remains in force because nothing in the LOA supersedes or conflicts with the 2015 CBA.  *Id*. at 9.  To Jay's allegation that Kaiser gave her more time to complete the associate's degree, IUOE maintains that it is implausible that the same Kaiser employee who informed her that she had only completed 36.7% of the educational course requirements would give her an extension.  *Id*. at 10-11.  As a result, IUOE contends Jay has not plausibly alleged Kaiser violated the CBA.  *Id*. at 9-11.  The Court disagrees.

IUOE's argument that Jay fails to plausibly allege why the LOA is invalid is belied by the specific factual allegations found in the FAC.  In granting the first motion to dismiss, the Court noted that the original complaint was deficient because it merely alleged that the LOA was void, without any specific allegations as to why.  Docket No. 42 at 14.  In contrast, the FAC specifically alleges that Kaiser intended to eliminate the BET educational requirements present in the 2012 CBA by removing them from the 2015 CBA.  FAC ¶ 13.  Because the purpose of the LOA was to allow Jay and others to satisfy the BET program requirements in the 2012 CBA, which no longer existed, the LOA was no longer applicable.   FAC ¶ 15.  Accordingly, Jay states she met the qualifications for the BET position, and Kaiser terminated her without cause.  FAC ¶ 15.

IUOE counters that these allegations are not plausible because they ignore the plain

language of the 2015 CBA, which specifies that: "Some Appendices may contain Side Letters of agreement or portions of Side Letters. These are attached to the Collective Bargaining Agreement for convenience and references. They are not meant to imply that they are the only Side Letters in existence or effective at this time." 2015 CBA p. 32. Contrary to the Union's assertion, however, nothing in this language conclusively demonstrates that the particular LOA at issue in this case remained in force; rather, it simply provides that *some* additional Side Letter remain effective, without specifying which. Jay's specific factual allegations – that Kaiser and the Union intended to eliminate the requirements of the LOA, and for that reason omitted it from the 2015 CBA – are enough, taken as true, "to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

The Union next maintains that, as to Jay's alternative allegations, her claim that Kaiser granted her an extension to complete the BET requirements is not plausible because an employee has to complete 75% of the coursework for an associate's degree in twenty-four months. Mot. at 10-11. The Union argues that because Kaiser informed Jay on October 15, 2015 that she had only completed 36.7% of the course requirements, it is implausible that Kaiser would have given Jay an extension in January 2014. *Id.* However, the FAC specifically alleges that Jay in fact completed more than 75% of the coursework within twenty-four months due to online course work. FAC ¶ 17. Taken as true, this fact would mean Jay met the requirements of the LOA, making her eligible for an extension of time if the LOA were in force.

In addition, Jay has plausibly alleged that Kaiser violated the CBA by applying the LOA requirements in a discriminatory fashion. The FAC alleges that Kaiser granted another employee, Jason Ponce, a Caucasian male, additional time to compete the BET requirements despite the fact that he had not completed 75% of the course work, as required under the LOA. FAC ¶¶ 14, 41. Kaiser denied Jay a similar extension, despite Jay's greater qualifications and experience. FAC ¶ 14. Taken as true, these actions would violate the anti-discrimination section of the 2015 CBA, which provides that: "Neither the Employer nor the Union shall discriminate for or against any employee or applicant for employment covered by this agreement on account of race . . . [or] sex." 2015 CBA, p.7. The FAC therefore plausibly alleges a violation of the 2015 CBA.

**United States District Court**
For the Northern District of California

ii.   Duty of Fair Representation

IOUE argues that the FAC only makes conclusory allegations that IUOE acted in an arbitrary, discriminatory or bad faith manner.  Mot. at 11.  However, because the FAC plausibly alleges that Kaiser violated the 2015 CBA, and that IUOE knew Jay had a potentially meritorious defense but failed to file a grievance, Jay's allegations are sufficient.

"[A] union breaches its duty of fair representation if its actions are either 'arbitrary, discriminatory, or in bad faith.'" *Simo v. Union of Needletrades*, 316 F.3d 974, 981 (9th Cir. 2003). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991) (internal citations omitted).  The union acts arbitrarily when it "ignore[s] a meritorious grievance or process[es] it in a perfunctory fashion." *Vaca*, 386 U.S. at 191.  However, a union "need not process a meritless grievance." *Galindo*, 793 F.2d at 1513.

Jay alleges that IUOE arbitrarily and capriciously failed to process her grievance following her dismissal.  FAC ¶ 12. The Union, by contrast, contends it did not act in an arbitrary manner by failing to file a grievance on Jay's behalf since Jay's grievance had no merit and a union has no duty to file a meritless grievance.  Mot. at 11.  As explained above, Jay has sufficiently alleged violations of the CBA by Kaiser.  She therefore has alleged a sufficiently meritorious grievance. In fact, the FAC alleges that the IUOE *knew* that Jay was not required to comply with the LOA and the 2012 CBA.  FAC ¶ 16.  The FAC states that IUOE therefore knew Jay had a meritorious defense to her termination but unreasonably chose not to protest it.  FAC ¶ 16.  Taking these allegations as true, the FAC plausibly alleges that the IUOE acted in an arbitrary manner by refusing to process her meritorious grievance.

Even leaving aside the contention that the Union specifically intended to eliminate the LOA requirements from the 2015, Jay plausibly alleges that the Union acted arbitrarily in failing to act on her grievance based on her claim that the omission of the LOA from the 2015 agreement meant that the LOA was no longer operative.  As noted above, the Union argues that the omission of the LOA from the later agreement was of no consequence, because the CBA elsewhere

provided that: "Some Appendices may contain Side Letters of agreement or portions of Side Letters. These are attached to the Collective Bargaining Agreement for convenience and references. They are not meant to imply that they are the only Side Letters in existence or effective at this time." 2015 CBA p. 32. But whether the LOA was, in fact, one such Side Letter is, at best a question of contract interpretation. Jay's proposed interpretation is at least plausible enough that the Union should have been required to process her grievance. This is especially true given the "pivotal role that an arbitrator plays in interpreting and administering CBAs." *Matson v. United Parcel Serv., Inc.*, No. 13-36174, 2016 WL 6543519, at *5 (9th Cir. Nov. 4, 2016).

In sum, Jay has alleged specific facts sufficient to state a plausible claim both that Kaiser violated the CBA and that the Union breached its duty of fair representation. The Court accordingly **DENIES** the motion as to Jay's duty of fair representation claim.

     b. <u>Bongon</u>

       iii. <u>Failure to Exhaust</u>

IUOE argues that Bongon's claims fail for three reasons: (1) Bongon has failed to exhaust her contractual grievance procedures; (2) Bongon has not plausibly alleged Kaiser violated the CBA; and (3) Bongon has not sufficiently alleged IUOE violated its duty of fair representation. Because the Court agrees that Bongon has failed to exhaust her grievance procedures, the Court does not reach the other issues.

"As a general rule, a collective bargaining unit must first exhaust contractual grievance procedures before bringing an action for breach of the collective bargaining agreement." *Carr v. Pac. Mar. Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990). "This requirement applies with equal force to claims brought against a union for breach of the duty of fair representation." *Id.* However, there are two situations in which a union's breach of the duty of fair representation excuses the exhaustion requirement. *Id.* at 1319. First, exhaustion is not required "where the union has sole power under the contract to invoke the higher stages of the grievance procedure, and if the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance." *Id.* (emphasis in original) (citations omitted). Second, "where grievants allege a breach of duty of fair representation with regard to negotiating the

**United States District Court**
For the Northern District of California

1   collective bargaining agreement," exhaustion of contractual grievance procedures may not be

2   required.  *Id.* (citations omitted).

3          This Court has previously ruled that under current Ninth Circuit law, the exhaustion

4   defense should no longer be considered as an unenumerated Rule 12(b) motion.  Docket No. 42,

5   pp. 16-17 (Order dismissing original complaint) (citing *Albino v. Baca*, 747 F.3d 1162, 1168-69

6   (9th Cir. 2003)).  Instead, the exhaustion question should be determined in a motion for summary

7   judgment, and if necessary, by a decision by the court following the summary judgment on

8   disputed questions of material fact.  *Albino*, 747 F.3d at 1171.  However, the Ninth Circuit

9   specified a narrow exception "in the rare event that a failure to exhaust is clear on the face of the

10  complaint."  *Id.* at 1166.  In such a case, defendants may bring the exhaustion defense in a Rule

11  12(b) motion to dismiss.  *Id.*  The burden to prove exhaustion thus falls on the defendant.  *See*

12  *Albino*, 747 F.3d at 1166 ("Failure to exhaust . . . is an affirmative defense the defendant must

13  plead and prove") (quoting *Jones v. Bock,* 549 U.S. 199, 204 (2007)) (internal citations omitted).

14  However, the burden of demonstrating that exhaustion would be futile falls on the plaintiff.  *See*

15  *Albino*, 747 F.3d at 1172 ("the burden shifts to the plaintiff to rebut by showing that the local

16  remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile"

17  (quoting *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996).

18         The FAC asserts that Bongon has "exhausted all administrative and contractual remedies

19  required on the part of a member of the union" and is "excused from exhausting certain

20  administrative and contractual remedies" because IUOE has breached the CBA.  FAC ¶ 7.  She

21  further asserts that IUOE "has the sole discretion and power under the [CBA] to invoke higher

22  stages of the grievance process."  *Id*.  The FAC also contends that IUOE "delayed processing

23  plaintiff Bongon's meritorious grievance to [her] detriment."  *Id*.

24         In its prior order, this Court found that Bongon's assertion that exhaustion would have

25  been futile was plausible enough to survive a motion to dismiss.  Docket No. 42, p.18.  The Court

26  determined it was plausible exhaustion would be futile because the complaint asserted she asked

27  IUOE to file a grievance and the union failed to take *any direct action* on her behalf.  *Id.*  In the

28  FAC, however, Bongon now admits that IUOE did in fact file a grievance.  *See* Order dismissing

**United States District Court**
For the Northern District of California

1  original complaint, p. 18; FAC ¶ 7.  Indeed, she conceded at the hearing on this motion that the

2  Union filed a grievance on her behalf, that the grievance proceeded to the Board of Adjustment,

3  (which split evenly on her claim), and that Bongon herself withdrew from the grievance process[2].

4  While IUOE "has the sole discretion and power under the [CBA] to invoke higher stages of the

5  grievance process," FAC ¶ 7, it is undisputed that the Union did invoke the arbitration procedure,

6  and that it was Bongon who refused to pursue it.  Bongon therefore failed to exhaust her

7  contractual remedies.

8         Bongon protests that by the time IUOE offered to proceed to arbitration she had already

9  filed her action in court.  But filing a lawsuit does not excuse exhausting contractual remedies.

10  *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653 (1965) ("A contrary rule which would

11  permit an individual employee to completely sidestep available grievance procedures in favor of a

12  lawsuit has little to commend it . . . If a grievance procedure cannot be made exclusive, it loses

13  much of its desirability as a method of settlement.").

14         Because it is clear that Bongon has failed to exhaust her remedies Bongon's duty of fair

15  representation must be dismissed.  However, the Court will grant Bongon leave to amend to

16  explain her position that it would have been futile to pursue her grievance in arbitration.  The

17  Court notes that Bongon has significant hurdles to overcome in doing so.  She must make specific

18  factual allegations showing that it would have been futile to proceed to arbitration despite the fact

19  that the Union had concededly processed her grievance, and had obviously not done so in a

20  perfunctory manner, given that the adjustment board deadlocked on her claim.  In alleging futility,

21  Bongon cannot rely on generalized claims that the Union had, in the past, acted in a discriminatory

22  fashion.

23         The Court therefore **GRANTS** the Union's motion as to Bongon's duty of fair

24  representation claims, but grants Bongon leave to amend to explain her futility theory.

25

26

27  ───────────────────

[2] Although technically not part of the 12(b)(6) record, Bongon does not dispute the accuracy of the
28  copy of her email terminating the grievance process by declining to proceed to arbitration; nor
does she dispute this is what in fact occurred.

United States District Court
For the Northern District of California

c.      FEHA claims

Plaintiffs' FAC for the first time alleges that the IUOE discriminated against Jay and Bongon on the basis of their race and gender in violation of FEHA.  FAC ¶ 35.  FEHA makes it unlawful for any labor organization "to discriminate in any way against any of its members or against any employer or against any person employed by an employer" on the basis of protected characteristics such as race.  Cal. Gov't Code § 12940.  The IUOE argues that these claims are preempted under both Section 301 of the LMRA and Section 9 of the NLRA, and that in any case Plaintiffs have not alleged sufficient facts to support their claims.

The Court need not reach the preemption question, because it agrees with the Union that Plaintiffs' allegations are entirely conclusory.  For example, Plaintiffs' assert that "IUOE failed to represent Ms. Jay and Ms. Bongon in the manner that IUOE represents other union members who were not female, who were not African-American or Filipino American."  FAC ¶ 36.  But they make no specific allegations regarding other instances in which members of other groups allegedly received better treatment by the IUOE in fulfilling its duty of fair representation.  Other allegations of race and discrimination, including those pertaining to Jay's dismissal, plainly refer to actions taken by Kaiser, not the union.  FAC ¶ 43.

Plaintiffs also allege that the union retaliated against them for complaining "about conduct that affected the safety of patients and the public," including "unsafe sanitary conditions of the equipment and a hostile work environment."  FAC ¶ 40.  First, these facts are not relevant to a claim of race or gender discrimination.  But in any case, these complaints are not mentioned anywhere else in the FAC, and Plaintiffs provide no details about the complaints they raised, nor do they explain why the *union*, rather than the employer, would take action to retaliate against them for such complaints.  Plaintiffs claim that the Union "collaborated, aided and abetted Kaiser in retaliating against them," but that bare, unsubstantiated allegation cannot rise to the level of plausibility required under *Iqbal*.

As noted above, in its order dismissing Plaintiffs' initial complaint, the Court already found, in the context of Plaintiffs' duty of fair representation claims, that their allegations of discriminatory and bad faith conduct on the part of the Union were conclusory and unsupported by

14

factual allegations.  The FAC does nothing to repair this shortcoming.  Because Plaintiffs have, for a second time, asserted only conclusory allegations of discrimination, the Court finds that further amendment would be futile.  The Court accordingly **DISMISSES** Plaintiffs' FEHA claims with prejudice.  *See Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999) ("Liberality in granting a plaintiff leave to amend is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile."); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").

## V.   CONCLUSION

For the foregoing reasons, the Court **DENIES** the Union's motion as to Jay's duty of fair representation claim, but **GRANTS** the motion as to Bongon's duty of fair representation claim and the FEHA claims.  The Court **DISMISSES** Bongon's duty of fair representation claim with leave to amend to allege facts supporting her assertion that it would have been futile to take her claim to arbitration.  The Court **DISMISSES** the FEHA claims with prejudice,

This order disposes of Docket No. 46.


**IT IS SO ORDERED**.


Dated: November 21, 2016

_____
EDWARD M. CHEN
United States District Judge

United States District Court
For the Northern District of California