UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA E. JAY, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION - UNITED HEALTH CARE WORKERS WEST, et al.,<br><br>　　　　　Defendants. | Case No. 16-cv-01340-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Docket No. 62 |

## I. INTRODUCTION

Plaintiffs Sheila Jay and Robin Bongon allege that Defendant International Union of Operating Engineers – Stationary Engineers Local 39 ("IUOE" or "the Union") violated the duty of fair representation under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Previously, this Court denied the Union's motion to dismiss Plaintiffs' First Amended Complaint as to Jay, but granted the motion with leave to amend as to Bongon. After the Union moved to dismiss Bongon's claims in Plaintiffs' Second Amended Complaint ("SAC"), Docket No. 62, the Court gave notice that it intended to consider evidence from outside the pleadings, and would accordingly treat the motion as one for summary judgment under Federal Rule of Civil Procedure 56, Docket No. 69. The Court now **GRANTS** summary judgment to the Union on Bongon's claims.

## II. FACTUAL AND PROCEDURAL HISTORY

Bongon worked as a biomedical engineer, or "biomed," in the Clinical Technology department at Kaiser beginning in 2007. SAC ¶ 24. Bongon is a member of the Union, and the terms and conditions of her employment at all relevant times were governed by a collective

bargaining agreement ("CBA") between the Union and her employer, Kaiser. One CBA, the "2012 CBA," covered the period from September 18, 2012 to September 17, 2015. A new "2015 CBA," in force until 2018, went into effect on September 18, 2015. In August 2015, the Lead biomedical engineer at Kaiser's Walnut Creek facility gave notice of retirement. SAC ¶ 30. Bongon alleges that she "was qualified for the Lead Position based upon seniority and facility preference but Kaiser refused to promote her to the position." SAC ¶ 30. Specifically, Bongon alleges that under the 2012 CBA, she was "next in line for the position," because the 2012 agreement mandates that qualified applicants from the same facility with seniority be given preference. SAC ¶¶ 20; 30. The 2015 CBA, by contrast, specifies that in promotions to Lead Position, Kaiser would select from the three most senior qualified applicants across facilities, and that vacant positions should be posted for seven days and bid by seniority. SAC ¶ 21. While Bongon claims that she was "entitled to preference under both agreements" and that Kaiser's refusal to promote her "breached both CBAs," the gravamen of her complaint is that Kaiser intentionally delayed filling the position until after the new CBA went into effect, allowing them to choose from among the top three qualified applicants in the region instead of selecting by seniority. SAC ¶ 23. Bongon interviewed for the position in November 2015, but Kaiser ultimately promoted a male biomed from a different facility to the lead position. *Id.*

On January 22, 2016, the Union filed a grievance on Bongon's behalf. Docket No. 63-4. On March 18, 2016, Bongon filed the instant lawsuit. Docket No. 1. On April 18, 2016, Bongon's grievance was heard by a Board of Adjustment, resulting in a tie vote. Docket No. 70 (Gong Decl.) Ex. 3. Under the contractual grievance procedure, the next step was to proceed to arbitration. Bongon, however, declined to do so, informing her union representative that she found the arbitration process "futile." Gong Decl. Ex. 4.

On November 21, 2016, this Court granted the Union's motion to dismiss Bongon's First Amended Complaint, because she failed to exhaust her contractual grievance procedures. Docket No. 58 at 13. The Court granted Bongon leave to amend to explain her contention that it would have been futile to pursue her grievance in arbitration. *Id.* After the Union moved to dismiss the SAC, this Court gave notice to the parties that it intended to convert the motion into one for

summary judgment under Federal Rule of Civil Procedure 56, *see* Fed. R. Civ. P. 12(d), and provided the parties with the opportunity to submit additional evidence. Docket No. 69.

### III. DISCUSSION

A. Standard of Review

"Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (citing *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016) (quoting *R.W. Beck & Assocs. v. City & Borough of Sitka*, 27 F.3d 1475, 1480 n.4 (9th Cir. 1994)).

"A moving party without the ultimate burden of persuasion at trial" – such as Dropbox in this case – nonetheless "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The moving party may discharge its initial burden by "show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1188 (9th Cir. 2016) (quoting *Nissan Fire*, 210 F.3d at 1102). Where "a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* (quoting *Nissan Fire*, 210 F.3d at 1102). The ultimate question at summary judgment is whether "the record taken as a whole could . . . lead a rational trier of fact to find for the non-moving party"; if not, then "there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 287 (1968)); *see also Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1039 (9th Cir. 2005).

B.     Bongon's Fair Representation Claim

Under Section 301 of the Labor Management Relations Act ("LMRA"), "[a] union owes a duty of fair representation to those it represents, and an employer must honor the terms of a CBA to which it is a party." *Bliesner v. Commc'n Workers of Am.*, 464 F.3d 910, 913 (9th Cir. 2006). When these duties are violated, "[a]n aggrieved party may bring a hybrid fair representation/§ 301 suit against the union, the employer, or both. In order to prevail in any such suit, the plaintiff must show that the union and the employer have both breached their respective duties." *Id*. Thus, "[w]hether the defendant is the union or the employer, the required proof is the same: The plaintiff must show that there has been both a breach of the duty of fair representation and a breach of the CBA." *Id*. at 913-14.

As a threshold matter, however, the Union argues that Bongon's claim fails because she failed to exhaust the grievance procedures provided for in her CBA before bringing the present action. "As a general rule, members of a collective bargaining unit must first exhaust contractual grievance procedures before bringing an action for breach of the collective bargaining agreement." *Carr v. Pac. Mar. Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990). "This requirement applies with equal force to claims brought against a union for breach of the duty of fair representation." *Id.* Here, it is undisputed that Bongon did not exhaust her grievance remedies. The Union filed a grievance on her behalf, and after the adjustment board deadlocked, Bongon told her Union representative, Mark Gong, that she did not wish to proceed to arbitration, the next step of her contractual grievance process. Gong Decl. Ex. 3.

However, there are two situations in which a union's breach of the duty of fair representation excuses the exhaustion requirement. *Id.* at 1319. First, exhaustion is not required "where the union has sole power under the contract to invoke the higher stages of the grievance procedure, and if the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance." *Id.* (emphasis in original) (citations omitted). Second, "where grievants allege a breach of duty of fair representation with regard to negotiating the collective bargaining agreement," exhaustion of contractual grievance procedures may not be required. *Id.* (citations omitted). Bongon argues that the first exception

4

applies because the Union's alleged wrongful delay in filing her grievance made it futile to pursue arbitration. Accordingly, the Union is entitled to summary judgment only if no reasonable factfinder could conclude, based on evidence in the record, that it would have been futile for Bongon to proceed to arbitration.

Bongon argues that it would have been futile to proceed to arbitration for several reasons. First, she claims that the Union was required to file any grievance on her behalf within 30 days of Kaiser's misconduct, which Bongon appears to argue was complete as of September 5, 2015, when the lead biomed position became available. Docket No. 65 ("Opp.") at 6; Docket No 71-1 (Bongon Decl.) ¶ 10. Accordingly, she argues, the Union should have filed a grievance by October 5. Its failure to do so "made arbitration futile" because Kaiser "had a valid defense" based on the timeliness of the grievance. This argument fails for two reasons. As the Union notes, Kaiser was already participating in the grievance process, and had not raised any timeliness objection. Accordingly, any such defense was likely waived. Moreover, it is well established that it is fully within the arbitrator's purview, rather than that of the courts, to "decide allegations of waiver, delay, or a like defense to arbitrability." *Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 531 (9th Cir. 2016) (quoting *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002)). The Adjustment Board implicitly concluded that Bongon's claims were not time-barred by reaching a decision on the merits. That conclusion is the sort of "quintessentially procedural decision to which [a] district court [is] required to . . . defer." *Id.*

Second, Bongon argues that arbitration was futile because the grievance filed by the Union did not specifically argue that Kaiser's actions violated the 2012 CBA, as opposed to the 2015 CBA. This argument is also meritless. Bongon herself argues that Kaiser's actions violated *both* the 2012 and the 2015 CBAs. SAC ¶ 22. Given she asserted the 2015 CBA claim had merit, she cannot now argue arbitration of that claim was futile. And Gong states that at the Adjustment Board hearing, he made the same claim, arguing that, in light of Kaiser's past practices, Bongon was entitled to preference based on her "facility seniority" under both the 2012 and 2015 CBAs. Gong Decl. ¶ 6; *see also Sw. Reg'l Council of Carpenters*, 823 F.3d at 533 (explaining that arbitrators may appropriately interpret CBAs in light of the parties' past practices). Bongon

5

objects to the fact that Gong did not specifically argue that Kaiser violated the 2012 agreement, Bongon Decl. ¶ 14, but Gong's assertion that she had seniority under *either* agreement amounts to the same thing. In any case, however, the very fact that the Adjustment Board *deadlocked* on Bongon's claim belies her assertion that it was futile to pursue arbitration. Whatever theory the Union pursued was meritorious enough that two members of the Board voted in Bongon's favor, and there is no evidence that could lead a factfinder to conclude that she could not have fared at least as well before an arbitrator.[1]

Lastly, Bongon asserts that following the Adjustment Board hearing, Gong informed her that the fact that she had already filed a complaint in court meant that she could not move forward with arbitration. Bongon Decl. ¶ 15. This assertion is conclusively contradicted by evidence in the record in the form of Bongon's own emails. Following the hearing, Bongon wrote to Gong to request various documents. Gong Decl. Ex. 4. In that email, she also stated that she "didn't understand the arbitration you discussed after I left. Please explain what that is *since you said that's the next step.*" *Id.* (emphasis added). Thus, according to Bongon herself, Gong specifically explained that the next step in the grievance procedure was to proceed to arbitration. In response to Bongon's email, Gong simply attached the requested documents without further comment; he said nothing about the unavailability of arbitration. At that point, Bongon stated that she did not wish to proceed to arbitration. *Id.* In light of these emails, no reasonable fact finder could conclude that Gong made the representations Bongon claims he did. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372 (2007).

In sum, there is no dispute that Bongon opted not to arbitrate her grievance. No evidence

---

[1] Bongon also asserts that Gong did not "present any evidence of [her] complaints of gender discrimination in the enforcement of the old agreement." Bongon Decl. ¶ 15. But while Bongon has alleged that a male biomed was promoted instead of her, she has never claimed that she attempted to file a grievance on the basis of gender discrimination. *See* SAC ¶ 18 (noting that she filed a grievance for "violation of the prior collective bargaining agreement and failure to promote her to the position of lead biomedical engineer"). But even if she had, this argument would fail for the same reason as the previous one; given that the Adjustment Board deadlocked, it could not have been futile to proceed to arbitration on whatever theory the Union argued.

in the record would permit a reasonable fact finder to conclude that it would have been futile for her to do so. Accordingly, there is no triable issue of fact on this point. The Court therefore **GRANTS** summary judgment to the Union with respect to Bongon's claims.

This order disposes of Docket No. 62.

**IT IS SO ORDERED**.

Dated: February 22, 2017

_____
EDWARD M. CHEN
United States District Judge